IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CHAMBERLAIN GROUP, INC., | ) |
| | ) Civil Action No. 1:14-cv-5197 |
| Plaintiff, | ) |
| v. | ) Judge: |
| | ) |
| LINEAR LLC, | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |
| | ) |

## COMPLAINT

Plaintiff, The Chamberlain Group, Inc. ("CGI"), complains against Defendant, Linear LLC ("Linear"), as follows:

## GENERAL ALLEGATIONS

1. CGI is a company incorporated under the laws of the State of Connecticut, with its principal place of business in Elmhurst, Illinois.

2. CGI was founded in 1906 and offers innovative access control devices including residential garage door openers, commercial door operators, gate access solutions, home connectivity products, and related accessories. It is the leader in residential garage door openers and commercial door operators, with products grounded in safety, security, connectivity, and reliability.

3. Amongst other product offerings, CGI develops, manufactures, and sells the well-known LiftMaster® products, which have been recognized as the number one brand of professionally installed garage door openers as well as highly preferred Do-It-Yourself Chamberlain® branded products, which are present in a majority of garages in America. As an

inventive company, always seeking ways to better serve its customers and consumers with additional features and functionality (in addition to safety and security), CGI now also offers its new MyQ® technology for remote monitoring and control of the home and business, including garage doors, lights, and gates, both as a retrofit for most major brands of garage door openers and on new LiftMaster® and Chamberlain® MyQ®-enabled product lines.

4.     In order to continually improve its product offerings for its customers and consumers, CGI invests substantial resources in research and development of access control products—including in developing products having new and improved functionality, quality, and security.  Over the years, CGI has received accolades for being an innovation leader in this field of technology and numerous seminal and valuable patents for its inventions.  CGI provides these inventions to its customers and consumers in a steady stream of new and improved products.  CGI relies upon its patents to maintain and protect its reputation as the industry leader in access control technology, and to protect its customers and consumers from inferior and/or imitation devices that may suffer from safety, security or other issues.

5.     At least as early as 2003, CGI developed technology for access control products that operate over a network, allowing access control to a garage, house, building or other property through secure, remote communications such as from a smartphone, tablet, computer or other device connected to a network.  The United States Patent and Trademark Office (Patent Office), after considered review, acknowledged the inventiveness of CGI's inventions, granting CGI several pioneering patents on its inventions.  The technologies and products built on CGI's innovation and patents were released into the marketplace in 2011 and since that time have empowered CGI's customers and consumers to monitor and control their homes, including their garage doors and gates, from a smartphone or other mobile device — anytime, anywhere.  For example, the Chamberlain® offerings allow consumers to view, open and close their garage

doors, and to receive alerts and notifications, even when they are not home, and thereby help them ensure that their garage doors are closed and their homes are secure.

6. CGI's patents on this technology, which are only a few of the numerous patents the Patent Office has awarded CGI, include U.S. Patent No. 6,998,977 (Ex. 1) (referred to herein as the '977 patent), which claims inventions for monitoring and controlling the operator of a moveable barrier, such as a garage door or gate, over a network, for example, from a smartphone. The patents also include U.S. Patent Nos. 7,852,212 (Ex. 2) and 8,144,011 (Ex. 3) (referred to herein as the '212 and '011 patents), which claims inventions for interacting with the operator of a moveable barrier, such as a garage door or gate, through an alarm system. Because these are the three patents asserted in this lawsuit, these three patents are referred to as the "Asserted Patents."

7. The Patent Office examined the Asserted Patents over a period of several years. The Patent Office considered whether the inventions that they describe and claim were both new and also not obvious in light of prior patents, articles, inventions, and other references. The Patent Office also rigorously assessed the language used to describe and claim the inventions. After this thorough examination, the Patent Office determined that the inventions were inventive and patentable.

8. The Patent Office considered and examined the '977 patent on remote monitoring and control over a two year period, starting when the patent was filed on June 26, 2003. The Patent Office considered whether the '977 patent was new and not obvious in light of other patents on moveable barrier operators having network interfaces and remote monitoring. In issuing the patent, as reasons for allowance, the Patent Office Examiner noted that "each independent claim identifies the uniquely distinct features 'a movable barrier including a network interface; wherein the network interface receives a status change request from the

3

network client and the controller responds to the status change request by moving the barrier.'" The '977 patent includes 25 distinct inventions/claims.

9. The '212 and '011 patents are on interacting with the operator of a moveable barrier, such as a garage door or gate, through an alarm system. They are related and have the same description of CGI's technology. They were examined in turn over an almost three-year period, beginning when the first of them was filed on May 5, 2009. The Patent Office Examiner rigorously assessed these related patents in view of patents describing communication links between a transmitter and a garage door operator, and systems for giving alerts to garage door opener users. The Patent Office determined that the inventions claimed in these patents were inventive and awarded the patents. Collectively, the '212 and '011 patents include 50 distinct inventions/claims.

10. The inventions in the Asserted Patents provide fundamentally new and useful capabilities. The inventions give consumers peace of mind that they closed their doors and gates, and the flexibility to open them and let people in as needed, after they have left home. The technology enables people to think differently—and more confidently—about their homes, and avoid the potentially inconvenient or burdensome need to return home to check or control access.

11. The inventions are featured in Chamberlain® and LiftMaster® branded garage door openers, gate access solutions, lighting products, commercial door operators and related accessories as well as and with its retrofit accessory: MyQ Garage™. The Asserted Patents have protected CGI's products, including the MyQ® technology, since the first of the three patents was issued by the Patent Office on February 14, 2006.

12. On information and belief, Linear is a limited liability company with its principal place of business at 1950 Camino Vida Roble, Suite 150, Carlsbad, CA 92008-6517.

13. On information and belief, Linear offers products in a variety of security-related industries, including the access control industry. Eight years after CGI's '977 patent issued and more than three years after the '212 patent issued, Linear began marketing the GD00Z and the SW-ATT-GDC Garage Door Remote Controller Accessories. Linear claims that these products, like the Chamberlain® technology, connect to a user's existing garage door system and communicate with a user's home management system, allowing the user to remotely control a garage door from a smartphone through the home management system.

14. Though Linear has delayed release of some of its products on multiple occasions, Linear has advertised these products and provided demonstrations at multiple conferences, including at least the Consumer Electronics Show 2014 and International Security Conference. Linear has and/or will distribute these products for use with home management systems. Linear has already provided publicly available documentation that describes how the GD00Z and SW-ATT-GDC controller products work.

15. Linear's demonstrations and its own public documents make it clear that Linear is using CGI's patented inventions and is infringing the Asserted Patents.

16. Linear is not permitted by law to make, use, sell, offer for sale or import the GD00Z or SW-ATT-GDC products because, by doing so, Linear infringes CGI's U.S. Patent No. 6,998,977, for monitoring and controlling a moveable barrier operator over a network, for example, from a smartphone, and U.S. Patent Nos. 7,852,212 and 8,144,011, for interacting with a moveable barrier operator through an alarm system. Moreover, the law prohibits any other entity from making, using, selling, offering for sale or importing any product incorporating the Linear product. The law provides that this activity by Linear or any company incorporating the Linear technology into their products is only proper if CGI chooses to license its patents and if Linear or any end user takes a license and pays CGI fair value for its invention.

17. The GD00Z and SW-ATT-GDC products, and any equivalent products under different identifiers, are the products accused of infringing the Asserted Patents, and are therefore referred to here as the "Accused Controller Products."

18. CGI is entitled by law to keep the Accused Controller Products out of the marketplace and to prevent the entry of lower quality infringing goods from irreparably eroding the marketplace. Though CGI would be irreparably harmed should Linear's conduct continue, and though CGI is prepared to pursue legal relief to abate such harm, CGI attempted in good faith to work cooperatively with Linear to determine if a business resolution that would benefit all parties, CGI customers, and consumers at large would be possible. On January 22, 2014, in response to Linear's announcements about the Accused Products, CGI's Executive Vice President and General Counsel Eric Reeves sent a letter to Linear identifying several CGI patents, including the Asserted Patents, and inviting a business discussion. Linear chose to ignore the letter and instead engaged in discussions with CGI's customers, attempting to compete unfairly with CGI.

19. Linear was thus put on notice of CGI's patents and knew it was infringing, but continued and continues to this day with its infringing activities. In order to compete with CGI, Linear chose to knowingly misappropriate CGI's inventions. Our laws were developed to encourage business solutions and to protect intellectual property. They were developed to deter and punish such "willful infringement." As a result, and to deter future such conduct, the law provides the patentee, here CGI, up to three times its actual damages.

20. Linear's actions have caused harm, and will cause further harms to CGI if they continue. To the extent the Linear products do not satisfy CGI's high standards for quality, safety, and security, the use of CGI's patented technology in these products wrongfully damages CGI's good reputation. In addition, Linear's knowing acts of infringement have frustrated CGI's

6

ongoing strong business relationships, contracts, and potential contracts, with resulting lost sales and profits, and otherwise are or will cause substantial harm to CGI's business.

21. As a result of Linear's actions and refusal to even answer CGI's good faith attempt to reach a business solution that would benefit both companies, consumers, and the industry, CGI was forced to file this lawsuit to protect its patented innovations and its reputation as the leader in the control access industry.

## JURISDICTION AND VENUE

22. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.* The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a).

23. On information and belief, Linear is subject to personal jurisdiction in the State of Illinois and the Northern District of Illinois because it is doing and has done substantial business in this District, including business relating to the sale and distribution of the Accused Controller Products. Linear has a network of dealers that includes many dealers within the District. In addition, Accused Controller Products are sold through major third party retailers within the District.

24. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and/or 1400(b), because, among other reasons, Linear is subject to personal jurisdiction in this judicial District and has committed acts of infringement in this judicial District.

## COUNT I

### (Infringement of U.S. Patent No. 6,998,977)

25. Plaintiff incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

26. On February 14, 2006, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 6,998,977 ("the '977 patent"), entitled *"Method And Apparatus For Monitoring A Movable Barrier Over A Network,"* to Eric M. Gregori and Eric Peterson. A true and correct copy of the '977 patent is attached as Exhibit 1.

27. The CGI Group, Inc. is the owner, by assignment, of all right, title and interest in the '977 patent, including the right to recover damages for past infringement.

28. Linear has infringed and continues to infringe the '977 patent in this District and throughout the United States by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products, which practice one or more of the claims of the '977 patent.

29. Linear was aware of the '977 patent at least as early as January 22, 2014, when it received notice of the patent in a letter from CGI.

30. Linear also has induced and/or is inducing the infringement of the '977 patent by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products. One or more of the Accused Controller Products, as provided by Linear to its customers and used as intended and instructed, necessarily infringe the '977 patent and Linear has known of this infringement since at least January 22, 2014. Linear sold and/or offered for sale one or more of the Accused Controller Products, and is continuing to do so, to distributors and retailers, specifically intending to actively encourage them to sell the infringing devices for use in the United States in a manner that Linear knows to be infringing. Linear has also sold and/or offered for sale one or more of the Accused Controller Products, and is continuing to do so, to end users and others, specifically intending to actively encourage them to use the infringing devices in the United States in a manner that Linear knows to be infringing.

31. Linear has also contributed to and/or is contributing to the infringement of the '977 patent by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products. Linear has made and/or sold the Accused Controller Products with knowledge that these Products are especially designed for use as a component of a patented machine and are not staple articles of commerce suitable for substantial noninfringing use. For example, among other things, Linear actively and knowingly sells its Accused Controller Products and provides the manuals and other documentation for the Accused Controller Products to its customers and others for use as a component of a patented machine. One or more of Linear's Accused Controller Products are especially designed for use as a component of a patented machine, constitute a material part of the invention, are sold by Linear for the designed use, and are not a staple article of commerce suitable for substantial noninfringing use. On information and belief, Linear's customers and consumers have used the Accused Controller Products in the United States in this manner and infringed the '977 patent.

32. As a result of Linear's infringement of the '977 patent, Plaintiff has suffered and will continue to suffer damage. Plaintiff is entitled to recover from Linear the damages adequate to compensate for such infringement, in an amount to be determined at trial.

33. Linear's acts of infringement of the '977 patent herein have been committed and are being committed with full knowledge of Plaintiff's rights in the patent. On information and belief, Linear has acted and is continuing to act despite an objectively high likelihood that its actions constituted direct and/or indirect infringement of a valid patent, and knew or should have known of that objectively high risk since at least January 22, 2014. Linear's acts, since at least January 22, 2014, constitute willful and deliberate infringement, entitling Plaintiff to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

34. Linear's acts of infringement have caused and will continue to cause irreparable harm to Plaintiff, entitling Plaintiff to injunctive relief.

## COUNT II

### (Infringement of U.S. Patent No. 7,852,212)

35. Plaintiff incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

36. On December 14, 2010, the USPTO duly and legally issued U.S. Patent No. 7,852,212 ("the '212 patent"), entitled "*Alarm System Interaction With a Movable Barrier Operator Method and Apparatus*," to James Joseph Fitzgibbon. A true and correct copy of the '212 patent is attached as Exhibit 2.

37. The CGI Group, Inc. is the owner, by assignment, of all right, title and interest in the '212 patent, including the right to recover damages for past infringement.

38. Linear has infringed and continues to infringe the '212 patent in this District and throughout the United States by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products, which practice one or more of the claims of the '212 patent.

39. Linear was aware of the '212 patent at least as early as January 22, 2014, when it received notice of the patent in a letter from CGI.

40. Linear also has induced and/or is inducing the infringement of the '212 patent by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products. One or more of the Accused Controller Products, as provided by Linear to its customers and used as intended and instructed, necessarily infringe the '212 patent and Linear has known of this infringement since at least January 22, 2014. Linear sold and/or offered for sale one or more of the Accused Controller Products, and is continuing to do so, to distributors

and retailers, specifically intending to actively encourage them to sell the infringing devices for use in the United States in a manner that Linear knows to be infringing. Linear has also sold and/or offered for sale one or more of the Accused Controller Products, and is continuing to do so, to end users and others, specifically intending to actively encourage them to use the infringing devices in the United States in a manner that Linear knows to be infringing.

41. Linear has also contributed to and/or is contributing to the infringement of the '212 patent by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products. Linear has made and/or sold the Accused Controller Products with knowledge that these Products are especially designed for use as a component of a patented machine and are not staple articles of commerce suitable for substantial noninfringing use. For example, among other things, Linear actively and knowingly sells its Accused Controller Products and provides the manuals and other documentation for the Accused Controller Products to its customers and others for use as a component of a patented machine. One or more of Linear's Accused Controller Products are especially designed for use as a component of a patented machine, constitute a material part of the invention, are sold by Linear for the designed use, and are not a staple article of commerce suitable for substantial noninfringing use. On information and belief, Linear's customers and consumers have used the Accused Controller Products in the United States in this manner and infringed the '212 patent.

42. As a result of Linear's infringement of the '212 patent, Plaintiff has suffered and will continue to suffer damage. Plaintiff is entitled to recover from Linear the damages adequate to compensate for such infringement, in an amount to be determined at trial.

43. Linear's acts of infringement of the '212 patent herein have been committed and are being committed with full knowledge of Plaintiff's rights in the patent. On information and belief, Linear has acted and is continuing to act despite an objectively high likelihood that its

actions constituted direct and/or indirect infringement of a valid patent, and knew or should have known of that objectively high risk since at least January 22, 2014. Linear's acts, since at least January 22, 2014, constitute willful and deliberate infringement, entitling Plaintiff to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

44. Linear's acts of infringement have caused and will continue to cause irreparable harm to Plaintiff, entitling Plaintiff to injunctive relief.

## **COUNT III**

### **(Infringement of U.S. Patent No. 8,144,011)**

45. Plaintiff incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

46. On March 27, 2012, the USPTO duly and legally issued U.S. Patent No. 8,144,011 ("the '011 patent"), entitled *Alarm System Interaction With a Movable Barrier Operator Method and Apparatus*," to James J. Fitzgibbon. A true and correct copy of the '011 patent is attached as Exhibit 3.

47. The CGI Group, Inc. is the owner, by assignment, of all right, title and interest in the '011 patent, including the right to recover damages for past infringement.

48. Linear has infringed and continues to infringe the '011 patent in this District and throughout the United States by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products, which practice one or more of the claims of the '011 patent.

49. Linear was aware of the '011 patent at least as early as January 22, 2014, when it received notice of the patent in a letter from CGI.

50. Linear also has induced and/or is inducing the infringement of the '011 patent by making, using, importing, offering for sale and/or selling one or more of the Accused Controller

Products. One or more of the Accused Controller Products, as provided by Linear to its customers and used as intended and instructed, necessarily infringe the '011 patent and Linear has known of this infringement since at least January 22, 2014. Linear sold and/or offered for sale one or more of the Accused Controller Products, and is continuing to do so, to distributors and retailers, specifically intending to actively encourage them to sell the infringing devices for use in the United States in a manner that Linear knows to be infringing. Linear has also sold and/or offered for sale one or more of the Accused Controller Products, and is continuing to do so, to end users and others, specifically intending to actively encourage them to use the infringing devices in the United States in a manner that Linear knows to be infringing.

51. Linear has also contributed to and/or is contributing to the infringement of the '011 patent by making, using, importing, offering for sale and/or selling one or more of the Accused Controller Products. Linear has made and/or sold the Accused Controller Products with knowledge that these Products are especially designed for use as a component of a patented machine and are not staple articles of commerce suitable for substantial noninfringing use. For example, among other things, Linear actively and knowingly sells its Accused Controller Products and provides the manuals and other documentation for the Accused Controller Products to its customers and others for use as a component of a patented machine. One or more of Linear's Accused Controller Products are especially designed for use as a component of a patented machine, constitute a material part of the invention, are sold by Linear for the designed use, and are not a staple article of commerce suitable for substantial noninfringing use. On information and belief, Linear's customers and consumers have used the Accused Controller Products in the United States in this manner and infringed the '011 patent.

52. As a result of Linear's infringement of the '011 patent, Plaintiff has suffered and will continue to suffer damage. Plaintiff is entitled to recover from Linear the damages adequate to compensate for such infringement, in an amount to be determined at trial.

53. Linear's acts of infringement of the '011 patent herein have been committed and are being committed with full knowledge of Plaintiff's rights in the patent. On information and belief, Linear has acted and is continuing to act despite an objectively high likelihood that its actions constituted direct and/or indirect infringement of a valid patent, and knew or should have known of that objectively high risk since at least January 22, 2014. Linear's acts, since at least January 22, 2014, constitute willful and deliberate infringement, entitling Plaintiff to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

54. Linear's acts of infringement have caused and will continue to cause irreparable harm to Plaintiff, entitling Plaintiff to injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, CGI prays that this Court enters judgment and provides relief as follows:

A. That Linear has infringed and is infringing the Asserted Patents, namely, the '977 patent, the '212 patent, and the '011 patent;

B. That Linear has induced, and is inducing, infringement of the Asserted Patents;

C. That Linear has contributed to, and is contributing to, infringement of the Asserted Patents;

D. That Linear has willfully infringed, and is willfully infringing, the Asserted Patents;

E. That the Asserted Patents are valid and enforceable;

F. That Linear, and its officers, agents, servants, employees, and those in active concert or participation with them directly or indirectly, be enjoined from infringing the Asserted Patents as permitted by 35 U.S.C. § 283;

G. For an accounting for any infringing sales not presented at trial and an award by the Court of additional damages for any such infringing sales;

H. That Linear be ordered to account for and pay to Plaintiff the damages resulting from Linear's infringement of the Asserted Patents, including lost profits, together with interest and costs, and all other damages permitted by 35 U.S.C. § 284, including enhanced damages up to three times the amount of damages found or measured, but in any event no less than a reasonable royalty;

I. That this action be adjudged an exceptional case and Plaintiff be awarded its attorneys' fees, expenses and costs in this action pursuant to 35 U.S.C. § 285; and

J. That Plaintiff be awarded such other equitable or legal relief as this Court deems just and proper under the circumstances.

## **JURY DEMAND**

CGI demands trial by jury on all issues so triable.

Dated: July 9, 2014 By: *s/Karl R. Fink*
Karl R. Fink
krfink@fitcheven.com
Fitch, Even, Tabin & Flannery LLP
120 South LaSalle Street, Suite 1600
Chicago, IL 60603
Telephone: (312) 577-7000
Facsimile: (312) 577-7007

Katherine Kelly Lutton (To be admitted Pro Hac Vice)
lutton@fr.com
Tamara Fraizer (To be admitted Pro Hac Vice)
fraizer@fr.com
Bryan Basso (To be admitted Pro Hac Vice)
basso@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street., Suite 500
Redwood City, California 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

ATTORNEYS FOR PLAINTIFF
THE CHAMBERLAIN GROUP, INC.